IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED
SEP 02 2016
Clerk, U.S District Court
District Of Montana
Missoula

| NATIVE ECOSYSTEMS COUNCIL, | CV 16–106–M–DWM |
|---|---|
| Plaintiff, | |
| vs. | ORDER |
| LESLIE WELDON, in her official capacity as Regional Forester of Region One U.S. Forest Service; UNITED STATES FOREST SERVICE, an agency of the United Stated; and MARY ERICKSON, in her official capacity as Supervisor of the Custer National Forest, | |
| Defendants. | |

Plaintiff Native Ecosystems Council ("Native Ecosystems") seeks injunctive relief against Defendants Leslie Weldon,[1] Regional Forester of Region One of the United States Forest Service, Mary Erickson, Supervisor of the Custer National Forest, and the United States Forest Service (collectively "the Forest Service") on the grounds the Forest Service failed to comply with National Environmental

---

[1] Plaintiff names Leslie Weldon as Regional Forester of Region One; however, Leanne Marten is the Regional Forester for the Northern Region of the Forest Service. Native Ecosystems should address this issue.

-1-

Policy Act ("NEPA") when it approved the North Whitetail Post Fire Project Salvage Sale ("Whitetail Project") in the Custer National Forest by means of a "categorical exclusion," allowing it to forego conducting an environmental assessment ("EA") or environmental impact statement ("EIS"). Native Ecosystems seeks a preliminary injunction preventing the commencement of logging activities, which may begin as soon as September 5, 2016. (Doc. 9.) The motion is denied for the reasons set forth below.

I. **Preliminary Injunction**

A preliminary injunction is an extraordinary remedy never awarded as a matter of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20. "'Serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as" the remaining *Winter* elements are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (applying the "serious questions" test post-*Winter*). Native Ecosystems has not made such a showing here.

## A. Irreparable Injury

The actual and irreparable injury Native Ecosystems claims has been demonstrated in this case. The plaintiffs meet that prong of the *Winter* test. They have shown members' use and enjoyment of the area will be disturbed by Whitetail Project logging activity. (Johnson Decl., Doc. 15 at ¶ 9.) This is so even though the total area in question is a small percentage of transitional forest available. The Forest Service argues that because the area to be logged is small, any damage suffered by Native Ecosystems will be negligible. The Ninth Circuit has rejected any argument that "a plaintiff can never suffer irreparable injury resulting from environmental harm in a forest area so long as there are other areas of the forest not harmed." *Cottrell*, 632 F.3d at 1135.

## B. Success on the Merits

Native Ecosystems raises a serious question as to the Forest Service's failure to comply with NEPA during the scoping process for the Whitetail Project. It argues the Forest Service did not address the cumulative effects of salvage logging, including potential effects upon the black-backed woodpecker.

While NEPA often requires federal agencies to conduct an EA or EIS to assess the effects of a proposed action on the human environment, the Forest Service has the authority to adopt a "categorical exclusion" for a "category of

actions which do not individually or cumulatively have a significant effect on the human environment." 40 C.F.R. § 1508.4. The Forest Service categorically excluded the Whitetail Project under 36 C.F.R. § 220.6(a), which permits the categorical exclusion of a proposed action "from further analysis and documentation in an EIS or EA only if there are no extraordinary circumstances related to the proposed action" and the actions falls within one of a number of enumerated categories. Here, the Forest Service concluded the Whitetail Project fell within 36 C.F.R. § 220.6(e)(13) ("Category 13") which provides a categorical exclusion for the "salvage of dead/and or dying trees not to exceed 250 acres [and] requiring no more than ½ mile of temporary road construction."

The regulation allowing categorical exclusion is not an "escape NEPA free" card. Before using a categorical exclusion, the Forest Service must perform a "scoping process" to identify the significant issues related to the proposed action and judge the scope of the issues. *Sierra Club v. Bosworth*, 510 F.3d 1016, 1026 (9th Cir. 2007). "In determining the 'scope' of a proposed project, the responsible Forest Service officer is required to consider the cumulative impacts of connected, cumulative, and similar actions, and is required to produce an EA if the proposed project may have a significant effect on the environment." *Id.* at 1027. "Cumulative impact" means "the impact on the environment which results from

the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions." 40 C.F.R. § 1508.7. "Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time." *Id.*

The question here, then, is whether the Forest Service's scoping process sufficiently considered the cumulative impacts of the Whitetail Project in conjunction with other nearby salvage activities. This necessarily fact-intensive inquiry is complicated in this case by the lack of a certified administrative record. The Forest Service argues it "carefully reviewed the potential for cumulative effects as part of its analysis of extraordinary circumstances and determined the combined projects would cause no significant cumulative effects." (Doc. 12 at 9.) It supports its claim with citations to parts of what will eventually become the administrative record, including the Decision Memorandum ("Decision Memo") authorizing the Whitetail Project, (Doc. 12-1 at 20), and the Wildlife Report, (Doc. 12-5 at 28, 32). These excerpts do indicate the Forest Service at least considered the cumulative impacts of the salvage operations. Given, however, the lack of a complete administrative record, coupled with the recurring use of categorical exemptions in the vicinity of the Whitetail Project, the question of whether that consideration was sufficient to fulfill the Forest Service's NEPA obligations is a

serious one.

## C. Public Interest and the Balance of Equities

The analysis above leaves the public interest and the balance of the equities as the decisive factors in deciding whether to issue a preliminary injunction in this case. Under the "serious questions" test set forth in *Cottrell*, a plaintiff raising a serious question going to the merits of the claim may prevail only if that plaintiff can show "a balance of hardships that tips *sharply*" in its favor. 632 F.3d at 1135 (emphasis added). Native Ecosystems has not shown that the balance of hardships tips sharply in its favor.

Here, the line between the public interest and the balance of the equities is not clean. Indeed the line between these two analytical categories is itself often indistinct. *See Winter*, 555 U.S. at 24 (finding the Ninth Circuit "significantly understated the burden the preliminary injunction would impose on the Navy's ability to conduct realistic training exercises, and the injunction's consequent adverse impact on the public interest in national defense.") Thus, while the "balance of equities" refers to the relative burdens or hardships faced by the parties, *Winter*, 555 U.S. at 24-31, the equitable inquiry is often broader. Further, in some circumstances at least, analysis of the balance of the equities and the public interest merge when the government is the opposing party. *Nken v. Holder*,

556 U.S. 418, 435 (2009). Here, both Native Ecosystems and the Forest Service have themselves blended the two categories in their arguments.

As to the hardships, Native Ecosystems alleges the Whitetail Project will permanently deprive it and its members of the opportunity to view and enjoy the forest in its natural state. This hardship is not insignificant, as once an area is logged, the "recreational activities that would otherwise be available on that land are irreparably lost." *Cottrell*, 632 F.3d at 1138. Native Ecosystems further asserts a public interest in the preservation of dead trees for wildlife habitat, and the preservation fo black-backed woodpeckers. (Doc. 3 at 6-7.) This concern is also not insubstantial.

At the other side of the scale, the Forest Service argues that Native Ecosystems' requested relief will interfere with a restoration project designed to hasten post-fire recovery, improve wildlife habitat diversity, restore healthy forest stand conditions, and promote firefighter safety. The Forest Service also insists the public interest lies in the economic benefit of harvesting salvageable dead and dying wood which, it argues, is of great importance to the town of Ashland, Montana. The Ashland Forest Products mill provides 40 jobs "in an area that has been suffering from unemployment rates in excess of 70 percent." (Apedaile Decl., Doc. 14 at ¶ 4.) Further, the loss of the Whitetail Project will "cause an

extreme hardship and possibly a curtailment or even a closure at the mill." (*Id.*)

On this record, the balance of the hardships cannot be said to tip sharply in Native Ecosystems' favor, as the "serious questions" test requires. The economic and managerial interests voiced by the Forest Service carry significant weight, and are not sharply outweighed by the recreational and scientific interests articulated by Native Ecosystems.

Accordingly, IT IS ORDERED that Plaintiff's motion (Doc. 9) is DENIED.

DATED this 2nd day of September, 2016. TIME 16:42 P.M.

Donald W. Molloy, District Judge
United States District Court